FILED
NOVEMBER 14, 2007
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED NATIONAL INSURANCE COMPANY | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. **07 C 6459** |
| GAREDA DIVERSIFIED BUSINESS SERVICES, INC. an Illinois Corporation and CYNTHIA PEARSON-SINGER Independent Administrator of the Estate of ROBERT PEARSON, JR. deceased | ) ) ) ) ) ) | **JUDGE MANNING** **MAGISTRATE JUDGE SCHENKIER** |
| Defendants. | ) ) | |

## COMPLAINT FOR DECLARATORY JUDGMENT

NOW COMES Plaintiff UNITED NATIONAL INSURANCE COMPANY ("United National"), and for its Complaint for Declaratory Judgment states as follows:

### PARTIES AND JURISDICTION

1.  United National Insurance Company ("United National") is an insurance company, organized under the laws of the Commonwealth of Pennsylvania, with its principal place of business in Bala Cynwyd, Pennsylvania.

2.  At all relevant times United National was licensed and in good-standing with regard to the issuance of insurance policies within the state of Illinois.

3.  Gareda Diversified Business Services, Inc. ("Gareda"), is an Illinois Corporation with a principal place of business located at 1431 Huntington Drive, Calumet City IL 60409, an address within Cook County, Illinois.

1

439586.1

4. In addition to the address stated in Paragraph 3, Gareda maintains two other locations within Cook County; one located at 8547 S. Stony Island, Chicago IL 60617 and a second office located at 6120 West North Avenue, Chicago IL 60639.

5. At all relevant times, Gareda was in the business of providing home health care services to Illinois residents.

6. Cynthia Pearson-Springer, is the daughter of Robert Pearson, Jr., deceased, and is the independent administrator of the estate of Robert Pearson, Jr.

7. Cynthia Pearson-Springer, as the independent administrator of the estate of Robert Pearson, Jr. has brought a lawsuit against Gareda in the Circuit Court of Cook County (Case No. 2007-L-008981), ("the Lawsuit") and for which Gareda has sought insurance coverage and defense from United National. As such, Ms. Pearson-Springer is a necessary and interested party to this Declaratory Judgment action.

8. This case involves questions of coverage regarding an insurance policy with limits of $2 million per occurrence for injuries alleged in the Lawsuit. As such, the amount in controversy is in excess of $75,000 exclusive of interests and costs.

9. This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. §1332 as there is complete diversity of citizenship between Plaintiffs and Defendants.

10. Venue is proper in this District pursuant to 28 U.S.C. § 1391, in that the Lawsuit has been filed in Cook County in this District, and because Ms. Pearson-Springer and Gareda are located in this district.

11. In the Lawsuit, Ms. Pearson-Springer alleges that on May 3, 2006, Gareda provided home health care services to Robert Pearson, Jr. at his home located at 2215 East 69th Street, Chicago IL 60649, within Cook County, IL.

439586.1

12. In the Lawsuit, Ms. Pearson-Springer alleges that on May 3, 2006 and at all times relevant herein, non-party Debbie Lewis was a licensed Certified Nursing Assistant and the duly authorized agent and/or employee of Gareda.

13. In the Lawsuit, Ms. Pearson-Springer alleges that on May 3, 2006 and at all times relevant herein, Ms. Lewis was assigned by Gareda, pursuant to Gareda's agreement with IDOA, to provide home health care to Mr. Pearson at his home located at 2215 East 69th Street, Chicago IL 60649.

14. In the Lawsuit, Ms. Pearson-Springer alleges that at all times Ms. Lewis provided home health care to Mr. Pearson Ms. Lewis acted within the scope of her agency and employment by Gareda.

15. In the Lawsuit, Ms. Pearson-Springer alleges that on May 3, 2006, Ms. Lewis attempted to assist Mr. Pearson in descending a flight of stairs in his home.

16. In the Lawsuit, Ms. Pearson-Springer alleges that while attempting to descend the stairs, Mr. Pearson fell and was injured ("the Incident").

17. In the Lawsuit, Ms. Pearson-Springer alleges that on or about May 4, 2006, Mr. Pearson died as a result of his injuries suffered in the Incident.

18. Ms. Lewis, as duly authorized agent and/or employee of Gareda reported the Incident to Donna J. Cobb, a Gareda employee, and the Gareda employee responsible for the management of Mr. Pearson's care, on or about May 17, 2006.

19. Ms. Lewis, as duly authorized agent and/or employee of Gareda reported the Incident to Donna J. Cobb, a Gareda employee and the Gareda employee responsible for the management of Mr. Pearson's care, a second time, on or about June 9, 2006.

439586.1

20. In each of the instances of reporting referenced in Paragraphs 18 and 19, Ms. Lewis acted in her official capacity and within the scope of her employment with Gareda in reporting the Incident; and Ms. Cobb acted in her official capacity and within the scope of her employment with Gareda in receiving said reports.

21. On or about August 14, 2006, over three months after the Incident, Remel Duncan, Vice President of Gareda, in his official capacity as agent and/or representative of Gareda, submitted an *Application for Professional Liability Insurance Miscellaneous Medical* on behalf of Gareda to Resurgens Specialty Underwriting, Inc. ("RSUI Application") a corporation based in Atlanta, Georgia. A true-and-accurate copy of the RSUI Application completed by Mr. Duncan on behalf of Gareda, is attached as Exhibit 1 to this Complaint.

22. At the time Mr. Duncan completed the RSUI Application, RSUI provided Professional Liability Insurance and Commercial General Liability Insurance to Gareda, on a claims-made basis, as the authorized representative of Landmark American Insurance Company ("Landmark").

23. At the time Mr. Duncan completed the RSUI Application, the insurance provided by Landmark was to expire on or about September 6, 2006.

24. Page 4 of the RSUI Application contains Question #25, which reads:

> Is the applicant aware of any circumstances which may result in any claim against him, the firm, his predecessors in business, or any of the present or past Partners or Officers?

25. In his official capacity as Vice President of Gareda, and on behalf of Gareda, Mr. Duncan checked the "no" box for Question #25.

26. Page 5 of the RSUI Application is labeled "Representations" and states:

> The Applicant declares that the above statement and representations are true and correct, and that no facts have been suppressed or misstated. All written statements and materials furnished to the Company, in conjunction with this application will be incorporated by reference into this application and made part thereof.
>
> This Application does not bind the Applicant to buy, or the Company to issue the insurance, but it is agreed that this form shall be the basis of the contract should a policy be issued, and it will be attached to and made part of the policy. **The undersigned applicant declares that if the information supplied on this application changes between the date of this application and the time when the policy is issued, the Applicant will immediately notify the company of such changes, and the Company may withdraw or modify any outstanding quotations and/or authorization or agreement to bind the insurance**.

27. In his official capacity as Vice President of Gareda, and on behalf of Gareda, Mr. Duncan signed the RSUI Application in the space immediately following the Representations section of the application as referenced in Paragraph 26 of this Complaint.

28. In his official capacity as Vice President of Gareda, and on behalf of Gareda, Mr. Duncan did not provide any notice or reference to the Incident while completing the RSUI Application.

29. Sometime after August 14, 2006 the RSUI application was submitted by Gareda's insurance broker to United National to obtain rates and coverage from United National for the risk identified in the application.

30. United National relied upon the information, answers and representations contained in the RSUI application in quoting an insurance rate and offering to provide insurance to Gareda.

31. As United National assessed Gareda's risk based upon an insurance application submitted on the RSUI form, United National's offer to bind coverage to Gareda was bound subject to a completed, signed and dated United National application form.

32. On or about September 5, 2006, Plaintiff United National issued a binder of insurance to Gareda for $2,000,000 per occurrence/$4,000,000 aggregate Professional and General Liability insurance, with an effective date of September 6, 2006 and issued on a claims-made basis.

33. On or about September 5, 2006, Plaintiff United National issued a revised binder of insurance to Gareda for $2,000,000 per occurrence/$4,000,000 aggregate Professional and General Liability insurance, with an effective date of September 6, 2006 and issued on a claims-made basis.

34. That Binder of insurance and the Revised Binder of insurance issued by United National on September 5, 2006 were issued subject to Gareda's completion of a United National application for insurance.

35. On or about September 6, 2006, United National issued Commercial Insurance Policy Number AHB-0000237 to Gareda with an effective date of September 6, 2006 ("the Policy), a true and accurate copy of which is provided as Exhibit 2 to this Complaint.

36. The Policy provides both General Liability Coverage and Professional Liability Coverage, subject to its terms, conditions and exclusions.

37. The Professional Liability Coverage Part of the Commercial Insurance Policy issued by United National to Gareda (Policy No. AHB-0000237) states in relevant part:

> 5. **Representations**:
>
> By accepting this policy, you agree:

      a.      The statements in the Declarations and application, made part of this policy, are accurate and complete;

      b.      Those statements are based upon representations you made to us;

      c.      We have issued this policy in reliance upon your representations; and

      d.      This policy embodies all of the agreements exiting between you and us or any of our agents relating to this insurance.

38. On or about September 12, 2006, Cynthia Pearson-Springer, daughter of decedent Mr. Pearson, contacted Gareda and requested Gareda's business records regarding home health care provided to Mr. Pearson.

39. Shortly after Ms. Pearson-Springer's telephone call to Gareda on or about September 12, 2006, Donna J. Cobb, Gareda's Director of Homecare Services (who was informed of the incident involving Mr. Pearson by Debbie Lewis in May, 2006 and again in June, 2006), informed Gareda's senior management of the incident involving Mr. Pearson.

40. On or about September 21, 2006, Gareda received a Notice of Attorney's Lien from Timothy Tomasik of Clifford Law Offices, and a cover letter from Mr. Tomasik (dated September 19, 2006), advising Gareda that Mr. Tomasik represented Ms. Pearson-Springer "in a cause of action about to be brought against you for injuries and damages sustained… due to your negligence." A true and accurate copy of the letter is attached as Exhibit 3 to this Complaint, and a true and accurate copy of the Notice of Attorney's Lien is attached as Exhibit 4 to this Complaint.

41. Mr. Tomasik's September 21, 2006 letter to Gareda states, "we would suggest that you forward this lien to your insurance company immediately."

42. Mr. Tomasik's September 19, 2006 letter to Gareda was addressed to Gareda's Registered Agent, Remel C. Duncan.

43. The Notice of Attorney's Lien sent by Mr. Tomasik to Gareda was addressed to Gareda's Registered Agent, Remel C. Duncan.

44. On or about October 3, 2006, Remel C. Duncan, Vice President of Gareda, in his official capacity as agent and/or representative of Gareda, submitted a *Home Health Care/Temporary Staffing Application* ("United National Application") to United National. A true and accurate copy of the United National Application is attached as Exhibit 5 to this Complaint.

45. In completing the United National Application, Gareda requested an effective date for coverage beginning September 6, 2006.

46. On or about October 19, 2006, Jerry Leahy of Risk Management Resources, Inc. (a professional insurance broker), on behalf of Gareda provided notice to United National of the incident involving Mr. Pearson. A true and accurate copy of this notice is attached as Exhibit 6 to this Complaint.

47. On or about December 28, 2006, United National informed Gareda that the insurance policies issued by United National do not provide coverage to Gareda for any claim filed by Cynthia Pearson-Springer as administrator of the estate of Robert Pearson, Jr., and arising from the incident involving Mr. Pearson on May 3, 2006. A true and accurate copy of United National's December 28, 2006 correspondence to Gareda is attached as Exhibit 7 to this Complaint.

48. On or about August 24, 2007, Cynthia Pearson-Springer, as independent administrator of the estate of Robert Pearson, Jr. filed a Complaint in the Circuit Court of Cook

County, Illinois, County Department, Law Division, seeking monetary damages from Gareda Nursing Service, Inc., Gareda Diversified Business Services, Inc. and Gareda's employee and/or agent Debbie Lewis based upon allegations of negligence and wrongful death in connection with the death of Robert Pearson, Jr. A true and accurate copy of Ms. Pearson-Springer's Complaint is attached as Exhibit 8 to this Complaint.

49. On or about September 24, 2007, Jerry Leahy of Risk Management Resources, Inc., on behalf of Gareda forwarded a copy of the Complaint filed by Ms. Pearson-Springer to United National and demanded that United National provide defense and indemnification to Gareda on the allegations stated against it by Ms. Pearson-Springer. A true and accurate copy of that correspondence is attached as Exhibit 9 to this Complaint

50. United National now brings this Action for Declaratory Judgment against Gareda and Ms. Pearson-Springer and an Order from this Court providing that, as a matter of law, United National is not required to defend and/or indemnify Gareda against the allegations stated against Gareda by Ms. Pearson-Springer.

**COUNT I- ACTION FOR DECLARATORY JUDGMENT ON POLICY EXCLUSION**

51. Plaintiff re-states, re-alleges and incorporates by reference Paragraphs 1-50 of this Complaint as if fully re-written herein.

52. The allegations stated by Ms. Pearson-Springer against Gareda allege that Gareda was negligent in:

    a.    failing to use appropriate care and management in providing nursing assistance to Robert Pearson, Jr.;

    b.    failing to monitor Robert Pearson Jr. when he advanced down stairs with his walker contrary to doctor's orders;

    c.    failing to assist Robert Pearson, Jr. while he advance down stairs with his walker contrary to Doctor's orders;

9

      d.    failed to ascertain and heed doctor's directives with regards to Robert Pearson, Jr.'s walking down stairs;

      e.    failing to get appropriate medical follow-up care for Robert Pearson, Jr. following his fall down the stairs; and

      f.    were otherwise careless and negligent.

53.    In support of its allegations against Gareda, Ms. Pearson-Springer attached a report prepared by Dr. Gil Given pursuant to 735 ILCS 5/2-622.

54.    The *Designated Professional Services Exclusion* of the Commercial General Liability Coverage part of the Commercial Insurance Policy issued by United National to Gareda states in relevant part:

> This insurance does not apply to 'bodily injury', 'property damage' or 'personal and advertising injury' due to the rendering of or failure to render any professional service.

55.    The allegations stated by Ms. Pearson-Springer against Gareda are allegations that the decedent, Robert Pearson, Jr. suffered personal injury due to Gareda's rendering or failure to render professional services to Mr. Pearson.

56.    The allegations stated by Ms. Pearson-Springer against Gareda are excluded under the *Designated Professional Services Exclusion* of the Commercial General Liability Coverage part of the Commercial Insurance policy issued by United National to Gareda.

57.    There is presently a justiciable controversy between United National and Defendants regarding United National's obligations to provide a defense and indemnity for the Lawsuit.

58.    United National is entitled to an ORDER, to be issued by this Court providing that Gareda is not entitled to defense and/or indemnification under the Commercial General

Liability Coverage part of the Commercial Insurance policy issued by United National to Gareda.

**COUNT II- ACTION FOR DECLARATORY JUDGMENT ON POLICY EXCLUSION**

59. Plaintiff re-states, re-alleges and incorporates by reference Paragraphs 1-58 of this Complaint as if fully re-written herein.

60. Section I (2)(s) of the Professional Liability Coverage Part of the Commercial Insurance policy issued by United National to Gareda states in relevant part:

> This insurance does not apply to: …
>
> … s. Any 'claim', 'suit' or 'wrongful act' that might result in a "claim" or "suit", of which any insured had knowledge or could have reasonably foreseen, at the signing date of the application for this insurance.

61. The term "insured" is defined in Section III of the Professional Liability Coverage Part of the Commercial Insurance policy, titled "WHO IS AN INSURED", and states in relevant part:

> 1. If you are designated in the Declarations as:
>
>    … c. An organization other than a partnership or joint venture. You are an insured. Your current or former Executive Officers and Directors are insured, but only with respect to their duties as your Officers and Directors.
>
> 2. The following are also insureds:
>
>    … b. Your current and former employees and volunteers, whether salaried or contracted, other than medical doctors, chiropractors, optometrists and dentists, are insured while acting within the scope of their duties on your behalf.

62. Gareda had knowledge of the Incident it at the time of the signing date of the application for insurance with United National, namely the May 3, 2006 incident involving Robert Pearson, Jr.

63. Gareda could have reasonably foreseen a claim, suit or wrongful act resulting from the Incident at the time of the signing date of the application for insurance with United National.

64. Based upon exclusion I(2)(s) in the professional liability portion of the Policy, there is no coverage provided to Gareda for defense or indemnification against the allegations stated by Ms. Pearson-Springer against Gareda in the Lawsuit.

65. There is presently a justiciable controversy between United National and Defendants regarding United National's obligations to provide a defense and indemnity for the Lawsuit.

66. United National is entitled to an ORDER, to be issued by this Court providing that Gareda is not entitled to defense and/or indemnification under the Professional Liability Coverage Part of the Commercial Insurance policy issued by United National to Gareda.

**WHEREFORE**, Plaintiff United National Insurance Company respectfully requests that this Court enter a Declaratory Judgment finding that:

1. United National Insurance Company has no duty to defend and/or indemnify Gareda Diversified Business Services, Inc.;

2. Any ruling by this Court on the issues in controversy between United National Insurance Company and Gareda Diversified Business Services, Inc. is binding upon a claim stated by Cynthia Pearson-Springer, as independent administrator of the estate of Robert Pearson, Jr.; and/or

439586.1

3. Any relief deemed by this Court to be just and/or necessary.

Respectfully submitted,

**UNITED NATIONAL INSURANCE COMPANY**

By: /s/ Daniel E. Tranen
      One of its attorneys

Daniel E. Tranen, Esq.
WILSON, ELSER, MOSKOWITZ,
 EDELMAN & DICKER LLP
120 North LaSalle Street
Suite 2600
Chicago, IL  60602
Telephone:   (312) 704-0550
Facsimile:   (312) 704-1522

13

439586.1