# WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP

120 North LaSalle Street, Chicago, Illinois 60602-2412
Tel: (312) 704-0550   Fax: (312) 704-1522

*Albany • Baltimore • Boston • Chicago • Dallas • Garden City • Houston • Las Vegas • London • Los Angeles • McLean
Miami • Newark • New York • Philadelphia • San Diego • San Francisco • Stamford • Washington, DC • White Plains
Affiliates: Berlin • Cologne • Frankfurt • Munich • Paris*

www.wemed.com

WRITER'S DIRECT EXT. 127
WRITER'S SUITE: 2600
WRITER'S E-MAIL ADDRESS: TRANEND@WEMED.COM

**07 C 6459**

December 28, 2006

**JUDGE MANNING
MAGISTRATE JUDGE SCHENKIER**

Gareda Diversified Services, Inc.
Attn:  Remel Duncan
1431 Huntington Drive
Calumet City, IL 60409

Re:   Insured:      Gareda Diversified Services
      Claimant:     Estate of Robert J. Pearson
      Policy No.    AHB0000237
      UNIC file No. 06008245
      Wemed file No. 00894.00297

Dear Ms. Duncan:

We have been engaged by United National Insurance Company ("UNIC") to represent it with respect to the above-referenced matter. We write to provide UNIC's response to the notice of claim delivered to UNIC on or about October 19, 2006. For the reasons set forth herein, the UNIC Policy (No. AHB0000237) does not provide coverage for the above-referenced matter.

## SUMMARY OF THE FACTS WHICH HAVE BEEN REPORTED TO UNIC

On October 19, 2006, Risk Management Resources, Inc., the broker for Gareda Diversified Services, Inc. ("Gareda") first reported a claim to UNIC arising out of an incident which occurred in May, 2006. According to the potential liability claim report submitted along with the claim, Gareda's client, Robert Pearson, who was an elderly man, was receiving "homemaker services" from Gareda through the Illinois Department of Aging Community Care Program. Gareda's services were ongoing for Mr. Pearson for almost five years prior to the incident.

On the morning of May 3, 2006, Gareda employee Debbie Lewis was providing these "homemaker services" when Mr. Pearson allegedly asked her to help him outside because it was a nice day. According to the report, while Lewis helped Pearson down the steps, he missed a step and tumbled down, hitting his head ("the Incident"). He initially was helped back up the steps and was given ice for swelling. But at some later point, Pearson's son, who was home the entire time, called an ambulance and Pearson was taken to a hospital. There, he was diagnosed



368684.1

Remel Duncan
Gareda Diversified Services, Inc.
December 28, 2006
Page 2

as having a ruptured aneurysm. Pearson died the next day.

According to the information provided to UNIC, the Incident was reported to the case manager at "Counsils [sic] Senior Connections" later in May and again in June. According to the potential liability claim report, the Director of Homecare Services, Donna Cobb, neglected to notify "Gareda's Senior Management" of the incident. Thereafter, on September 12, 2006, Pearson's daughter requested her father's service records from Gareda. On September 21, 2006, Gareda received a notice of attorney's lien from the Clifford Law Offices for a potential claim arising out of the Incident.

Gareda completed and submitted two applications for insurance to UNIC for which the UNIC Policy was issued. The first application for insurance beginning in September 2006 is on a Resurgens Specialty Underwriting, Inc. ("Resurgens") form and dated August 14, 2006. On the Resurgens form, Gareda denies knowledge of any circumstances which may result in a claim. On the second application, also for insurance effective September 6, 2006, which is on a United National Group form, Gareda denied that it was aware of any incident that could become a claim or suit, and which has not been reported to Gareda's current insurance carrier (Landmark). The UNIC application form was signed by Gareda's representative on October 3, 2006.

In reliance upon these applications, UNIC issued both a Comprehensive General Liability ("CGL") Policy and a Professional Indemnity Policy. The CGL policy specifically excludes coverage for loss arising out of Gareda's professional liability. Since the loss at issue arose out of the provision of professional services by a Gareda employee, the professional indemnity portion of the coverage applies to this matter.

## THE PERTINENT POLICY PROVISIONS AND THE REPORTING OF THE CLAIM

The UNIC Policy contains an exclusion, which states:

> This insurance does not apply to *** any "claim," "suit," or "wrongful act" that might result in a "claim" or "suit," of which any insured had knowledge or could have reasonably foreseen, at the signing date of the application for this insurance.

Professional Indemnity Policy, Exclusion S. "Wrongful Act" is defined in this portion of the policy as "any act, error or omission in the furnishing of professional social services."

The Professional Indemnity Policy defines "Claim" as a "written demand upon the insured for "compensatory damages," including, but not limited to, the service of a "suit" or institution of arbitration proceedings against the insured. "Claim" includes "reports of accidents, acts, errors, occurrences, offenses or omissions which may give rise to a "claim" under this policy."

Remel Duncan
Gareda Diversified Services, Inc.
December 28, 2006
Page 3

Section III of the Professional Indemnity Policy identifies "insureds" as those designated in the Declarations as individuals and organizations, including the directors and officers of such organization. Insureds also includes, "your medical directors and administrators, but only while acting in the scope of their duties as such...." Insureds also include "your current and former employees and volunteers, whether salaried or contracted, other than medical doctors... while acting in the scope of their duties on your behalf."

In addition, the professional indemnity portion of the policy further provides that that,

By accepting this policy, you agree:

a.  The statements in the Declarations and application, made part of this policy, are accurate and complete;

b.  Those statements are based upon representations you made to us;

c.  We have issued this policy in reliance upon your representations...

Based upon the information provided to UNIC to date, it appears that Gareda first notified its prior insurer, Landmark, of the claim on October 5, 2006. On October 19, 2006, Gareda first sent notice of the claim to UNIC.

## UNIC'S COVERAGE ANALYSIS

UNIC has issued both general liability and professional liability coverage for Gareda. The professional liability cover is limited to coverage for damages arising out of wrongful acts. As noted above, wrongful acts in the professional liability policy refer to the provision of "professional social services." The CGL policy contains an endorsement which specifically excludes coverage for "all professional services."

Based upon the applications submitted to UNIC, which are made part of the UNIC Policy, Gareda's professional services included the provision of home healthcare services, including the provision of nursing services to Gareda's clients. It was during the provision of these very services that the alleged incident occurred, which gave rise to the claim against Gareda. Accordingly, the only potential coverage part which could provide coverage for the Incident is under the Professional Indemnity Policy.

As noted above, Exclusion "S" to the Professional Indemnity Policy bars coverage for the negligent provision of professional social services when "any insured had knowledge or could have reasonably foreseen" a claim or suit arising out of an occurrence involving the negligent provision of professional social services at the signing date of the application for this insurance.

"Insureds" under the UNIC policy include the medical directors, administrators, and

368684.1

Remel Duncan
Gareda Diversified Services, Inc.
December 28, 2006
Page 4

employees of Gareda. Since both the employee at issue, as well as the director of the homecare division of Gareda, had knowledge of the Incident, their knowledge triggers this exclusion. Of course, these insureds had this knowledge long before the signing date of either application form. In fact, arguably even senior management had knowledge of the incident before signing the UNIC application on October 3, 2006.

In addition, the initial reporting of the occurrence within Gareda which has (or will) subsequently give rise to a claim by the Estate of Pearson constitutes a "claim" under the UNIC policy. Since the claim by the Estate of Pearson was foreseeable, and in fact known by insureds at the time of its submission of both applications to UNIC, and in particular, prior to the signing and submission of the second application on October 3, 2006, there is no coverage for the Incident under the UNIC Policy.

Since it is clear that there is no coverage under the UNIC policies based upon the endorsement to the CGL policy and exclusion "S" to the Professional Indemnity Policy, UNIC has not determined whether additional policy terms, exclusions, or conditions might also apply to prevent coverage of this claim by UNIC. UNIC expressly reserves all of its rights, remedies and defenses under the Policy and pursuant to the applicable law. Nothing in this letter should be construed to give rise to any claims of waiver or estoppel, or in any other way affect UNIC's ability to raise other policy terms, conditions, or exclusions with regard to a claim by the Estate of Pearson or the Incident.

Should you disagree with our analysis or should you have further information that you wish to provide us, please forward any response to this letter to the undersigned. In addition, should you retain legal counsel, please ask your counsel to call the undersigned with any questions about our analysis.

In the event that we hear nothing further from you or your counsel within the next ninety (90) days, we will close our file and assume that no further action is expected from UNIC.

Very truly yours,

WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP

Daniel E. Tranen

cc:    Diane Cruz
       Clarion Hesse
       Daniel J. McMahon

368684.1