**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| UNITED NATIONAL INSURANCE COMPANY, | ) ) | |
| | ) | Case No.        1:07-cv-06459 |
| Plaintiff, | ) | |
| | ) | Judge Blanche Manning |
| v. | ) | |
| | ) | Magistrate Judge Schenkier |
| GAREDA DIVERSIFIED BUSINESS SERVICES, INC., *et al.*, | ) ) | |
| | ) | |
| Defendants. | ) | |

**RESPONSE TO PLAINTIFF'S
MOTION FOR ENTRY OF A DEFAULT JUDGMENT
AGAINST GAREDA DIVERSIFIED BUSINESS SERVICES, INC.**

Defendant Gareda Diversified Business Services, Inc. ("Gareda"), through its attorneys,

submits this memorandum in response to the motion for default judgment filed by Plaintiff United

National Insurance Company ("UNIC").

UNIC's motion is brought pursuant to Rule 55(a) of the Federal Rules of Civil Procedure,

which states as follows:

> When a party against whom a judgment for affirmative relief is
> sought has failed to plead or otherwise defend, and that failure is
> shown by affidavit or otherwise, the clerk must enter the party's
> default.  Fed. R. Civ. P. 55(a).

Although UNIC specifically cites Rule 55(a) as the basis for its motion, the relief that it seeks is not

consistent with the relief available under Rule 55(a).  UNIC does not here request that the clerk enter

a default, but rather asks that this Court enter a default judgment against Gareda for all of the relief

requested in the Complaint.  These are separate and distinct types of relief.  *See, e.g.*, United States

v. DiMucci, 879 F.2d 1488, 1490 n. 3 (7th Cir. 1989) ("Entry of a default under Rule 55(a) is not,

as such, entry of a judgment of default; it merely permits the plaintiff to move for such a judgment

under Rule 55(b)(2), assuming that the default is not set aside under Rule 55(c)"). *See also* <u>Hill v. Barbour</u>, 787 F.Supp. 146, 148 n. 4 (N.D. Ill. 1992) ("The entry of default under Rule 55(a) is an interlocutory step taken in anticipation of a final default judgment under Rule 55(b)").

The docket does not reflect that the clerk has entered a default under Rule 55(a) or that UNIC has requested one.  Because UNIC seeks relief beyond that afforded by Rule 55(a) and has heretofore failed to seek the entry of default permitted under that rule, UNIC's motion for default judgment is improper and should be denied.

Should the Court choose to overlook UNIC's confusion and nevertheless consider its motion, the request for a default judgment should be denied for additional reasons.  Entry of a default judgment rests within the Court's discretion.  <u>O'Brien v. R. J. O'Brien & Assoc., Inc.</u>, 998 F.2d 1394, 1398 (7th Cir. 1993).  The Seventh Circuit has made clear that a default judgment is an extremely "harsh sanction" that the district court should impose only in "extreme situations when other less drastic sanctions have proven unavailing."  <u>Silva v. City of Madison</u>, 69 F.3d 1368, 1377 (7th Cir.1995).  Here, there have been no "less drastic sanctions."  In fact, no other measures at all are necessary at this time because Gareda has appeared before the Court and sought leave to file its answer to the Complaint.

Although UNIC seeks to impose draconian consequences upon Gareda, the record shows that the truly prejudicial delay in this litigation has been caused by UNIC.  UNIC admits that Gareda tendered the defense of the underlying claim to UNIC no later than October 19, 2006.  Motion, ¶3.  Under Illinois law, an insurer which contests coverage must promptly decide to either defend the underlying lawsuit under a reservation of rights or file a declaratory judgment action seeking a declaration of no coverage.  <u>General Agents Ins. Co. of Am. v. Midwest Sporting Goods Co.</u>, 215

Ill.2d 146, 155, 828 N.E.2d 1092, 1098 (2005) ("When the underlying complaint against the insured alleged facts within or potentially within the scope of policy coverage, the insurer taking the position that the complaint is not covered by its policy must defend the suit under a reservation of rights or seek a declaratory judgment that there is no coverage"). Here, UNIC did neither for over a year until it filed this action on November 14, 2007. Having shirked its clear legal obligations and waited over a year to file this litigation in the first place, UNIC is hardly in a good position to point to any delay by its insured, Gareda.

Moreover, while UNIC's motion gives the impression that there was no activity whatsoever during the period between Gareda's waiver of service and today, that is simply untrue. In fact, two separate issues have been addressed by the parties during that time which Gareda reasonably believed might either bring a conclusion to, or substantially affect the course of, this litigation.

First, Gareda's counsel in the underlying litigation (which is different from Gareda's counsel in this litigation) has been in contact with UNIC's counsel continually about the possibility of resolving the underlying litigation with UNIC's participation. *See, e.g.*, Exhibit A (email correspondence from UNIC's counsel relating to potential settlement). While it is not suggested that such settlement discussions can stand in lieu of an answer to the Complaint, it is clear that Gareda has not simply ignored this litigation, but rather is seeking a resolution that would result in the prompt and efficient termination of the litigation. Further, it has been recognized that settlement negotiations between the parties and even an informal telephone call by the non-moving party's attorney may be interpreted as an appearance for purposes of Rule 55(b)(2). *See* North Cent. Ill. Laborers' Dist. Coun. v. S.J. Groves & Sons Co., Inc. 842 F.2d 164, 169 (7th Cir. 1988), *citing*

Muniz v. Vidal, 739 F.2d 699 (1st Cir. 1984), and Lutomski v. Panther Valley Coin Exch., 653 F.2d

270 (6th Cir. 1981).

Second, UNIC's counsel in this litigation –  Wilson, Elser, Moskowitz, Edelman & Dicker,

LLP ("WEMED") – has been advised of its serious conflict of interest with Gareda, which makes

it impossible for WEMED to continue to represent UNIC in this litigation.  Gareda was hopeful that

WEMED would act properly to remove itself from this litigation before the need to raise that

conflict arose.  However, inasmuch as WEMED now appears unwilling to do so, it will be necessary

to bring the conflict before the Court.

Under its deductible on the UNIC policy, Gareda was billed for (and paid, under threat of

a collection suit) WEMED's legal fees.  *See* Exhibit B (correspondence to Gareda from UNIC).[1]

Some of those fees cover legal services in which WEMED was **acting directly contrary to Gareda**

**in this very litigation**.  It is a basic tenant of professional responsibility, not to mention common

sense, that a lawyer may not properly treat an adverse party as a client and *vice versa*.  Rule 1.7 of

the Illinois Rules of Professional Conduct ("A lawyer shall not represent a client if the

representation of that client will be directly adverse to another client").

Yet WEMED's own documentation shows that it has, in fact, acted directly adverse to

Gareda's interests while Gareda was being billed for the time that WEMED spent in doing so.  Had

WEMED withdrawn from this litigation upon being advised by counsel for Gareda of its serious

conflict before Gareda was required to enter an appearance, it would have been unnecessary for

these matters to be brought before the Court.  In fact, when UNIC's counsel requested a continuance

---

[1]    The WEMED attorney billing statements that were enclosed with UNIC's correspondence have been omitted from this filing to avoid the possibility of waiving any rights or privileges.  They will be submitted under seal if the Court so directs.

of its motion for default, Gareda was under the impression that it was doing so in order to have additional time to resolve the conflict so that Gareda could then enter its appearance.

Instead of acting to resolve the conflict, a WEMED attorney stepped up at the hearing on July 31, 2008, and surprisingly announced that UNIC objected to Gareda's request to file an answer to the Complaint in seven days. Although the purported reason for the objection was UNIC's interest in acting expeditiously, it is apparent that the path that UNIC has chosen will be nowhere near as efficient as simply permitting Gareda to answer the Complaint.

Here, Gareda stands ready and willing to participate in the litigation. Rather than incur the risk that accompanies demonstrating its entitlement to the relief claimed (*see* United Nat'l Ins. Co. v. Fasteel, Inc., 550 F.Supp.2d 814, 829 (N.D. Ill. 2008) ("In an action for declaratory judgment, the burden of proof rests with the party seeking relief")), UNIC seeks to bypass the formalities of proof and move directly to judgment. Especially after having delayed in filing this action for over a year after receiving the tender of defense in the underlying action, UNIC's sudden interest in speed is difficult to interpret as anything other than tactical gamesmanship. Its use of a law firm with a direct conflict is impossible to interpret as anything other than bad faith.

//

//

//

//

//

//

//

Gareda respectfully requests that the Court exercise its discretion to deny UNIC's motion

for default judgment and grant Gareda seven days to answer the Complaint.

Respectfully submitted,


/s/ Timothy J. Storm
One of the attorneys for Defendant
Gareda Diversified Business Services, Inc.


Timothy J. Storm
Law Offices of Timothy J. Storm
227 North Main Street
Wauconda, Illinois 60084
Telephone:     847-526-6300
Facsimile:     847-526-6376
E-mail:         tjstorm@sbcglobal.net